## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ROBERT JOHN SHARPE, CINDY GUARISCO, WILLIAM CHASE MOEN, GARY DOWNARD, for themselves as individuals, and on behalf of themselves and for all others similarly situated,** | § § § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 3:12-cv-2542-O** |
| **v.** | § § | |
| **AMERIPLAN Corporation, a Texas Corporation; DENNIS BLOOM, and individual; DANIEL BLOOM, an individual; and DOES 1-100 inclusive,** | § § § § § | |
| **Defendants.** | § § | |

## BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ........................................................................................................... 1

II.     RELEVANT FACTS AND PROCEDURAL HISTORY ................................................. 1

III.    LOCAL RULE 23.2 ELEMENTS .................................................................................. 7

IV.     ACTION SHOULD BE CERTIFIED AS A CLASS ACTION ...................................... 10

        A.      Action Satisfies Requirements of Rule 23(a) ..................................................... 11

                1.      Individual Joinder of All Plaintiffs is Impracticable ................................ 11

                2.      There Are Questions Of Law And Fact Common To The Members of
                        Each Class .......................................................................................... 12

                3.      The Claims Of The Representative Plaintiffs Are Typical Of Those Of
                        The Classes ......................................................................................... 14

                4.      The Plaintiffs And Their Counsel Will Fairly And Adequately Protect The
                        Interests Of The Classes ....................................................................... 15

V.      THIS ACTION SATISFIES FRCP 23(B)(3) ................................................................. 16

        A.      Common Questions of Law and Fact Predominate ............................................. 17

                1.      Breach of Contract Claims .................................................................... 18

                2.      Fraud Claims ...................................................................................... 20

                3.      Breach of Fiduciary Duty ..................................................................... 22

                4.      Conversion ......................................................................................... 23

                5.      Damages ............................................................................................ 24

        B.      A Class Action is Superior to Other Available Methods for the Fair and Efficient
                Adjudication of this Action ............................................................................... 24

VI.     CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877 (Tex. App. Dallas 2009) ............................................................................................................................. 23

*Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. Fla. 2003) ...................................... 18

*Amchem Prods. v. Windsor*, 521 U.S. 591 (U.S. 1997) ................................................................ 15

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 2012 U.S. Dist. LEXIS 24823 (N.D. Tex. Jan. 27, 2012) ..................................................................................... 11, 12

*Barrie, et al., v. Intervoice-Brite, Inc., et al.,* 2009 U.S. Dist. LEXIS 99253 (N.D. Tex. 2009).. 14

*Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888 (N.D. Tex. May 19, 2011) ......................... 11

*Burns v. Rochon*, 190 S.W.3d 263 (Tex. App. Houston 2006)..................................................... 23

*Durrett v. John Deere Co.,* 150 F.R.D. 555 (N.D. Tex. 1993) ..................................................... 18

*Feder v. Elec. Data Sys.,* 429 F.3d 125 (5th Cir. 2005)................................................................ 15

*Foley v. Daniel*, 346 S.W.3d 687 (Tex. App. El Paso 2009)........................................................ 18

*Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472 (Tex. App. Dallas 2010). ................................ 22

*Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D. Tex. 2000)...................................................... 24

*In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559 (E.D. Tex. 2005)................................ 24

*In re Katrina Canal Breaches*, 401 Fed. Appx. 884 (5th Cir. 2010) .......................................... 16

*In re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003)............................................. 19

*Lightbourn v. Cnty. of El Paso,* 118 F.3d 421 (5th Cir. 1997) ............................................... 12, 14

*McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32 (E.D. Pa. 1985) .................. 19

*Medina v. United States*, 208 F.R.D. 148 (W.D. Tex. 2001)........................................................ 11

*Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir. 1999) ....................................... 12

*Republic Nat'l Bank v. Denton & Anderson Co.*, 68 F.R.D. 208 (N.D. Tex. 1975). ................... 17

*Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566 (D.N.H. 1973) ............................................................. 19

*Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) ....................................... 17

*Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002)................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................ 13

*Watson v. Shell Oil Co.,* 979 F.2d 1014 (5th Cir. 1992)............................................................. 11

**Other Authorities**

FRCP 23 *Advisory Committee's Office Note (1966 Amendments)* ............................................... 21

**Rules**

FRCP 23(a) .................................................................................................................. 10, 11

FRCP 23(a)(2)..................................................................................................................... 12

FRCP 23(a)(3)..................................................................................................................... 14

FRCP 23(b)(3) .................................................................................................................... 16

Local Civil Rule of the United States District Court for the Northern District of Texas 23.2 ....... 7

**Treatises**

Newberg on Class Actions, "Prerequisites for Maintaining a Class Action" §3:5 (4th ed. 2002) 11

## I.     INTRODUCTION

Plaintiffs Robert John Sharpe, Cindy Guarisco, William Chase Moen, and Gary Downard (collectively "Plaintiffs") brought this class action lawsuit, on behalf of themselves and others similarly situated, to hold Defendants responsible for their bait-and-switch scheme to defraud thousands of people out of their hard-earned lifetime and vested residual commissions, promised to them by Defendants.  Plaintiffs now bring this motion to certify a class of persons in accordance with Federal Rule of Civil Procedure 23 and Local Rule 23.2 to have the Court finally certify this action as a class action to hold Defendants' responsible for their wrongdoings that have affected so many people.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Defendant AmeriPlan Corporation ("AmeriPlan") is a discount medical plan organization that offers discount packages through its member network.  Complaint ¶25 [DN 1].  AmeriPlan, through its shareholders, officers and representatives, Defendants Dennis and Daniel Bloom (the "Bloom Brothers"), recruited Plaintiffs and other similarly situated, to become Independent Business Operators ("IBOs") to sell AmeriPlan's discount medical plans.  *Id*.  To entice these IBOs to sell its products, Defendants continually represented that IBO's would be guaranteed a "life of financial freedom", including "lifetime residual income" based on commissions that the IBO's earned.  Complaint ¶¶28-29, 32-36 [DN 1].  Defendants further represented that if these IBOs reached the level of "Regional Sales Director" ("RSD") they would then receive a "lifetime vested contract" would be "willable and sellable," including "permanent residual income" and "lifetime residual income."  Complaint ¶27, See also, *infra*.

### The Contracts

The Plaintiffs and proposed class members achieved the at least the level of RSD.  Ev. App. 188.  Plaintiffs entered into the promised "lifetime vested contracts," which contracts were

labeled as "Sales Director Agreement" and "Regional Sales Director Contract."  Ev. App. 5, 17,

30, 47.  According to Defendant's discovery responses, these contracts govern the relationship

among the entire proposed class members.  Ev. App. 184.  Plaintiffs' contracts all contain

substantially similar terms related to the payment of commissions after termination of the

contract, confirming the "lifetime residual income" due to IBO's who achieve RSD status:

Plaintiff Cindy Guarisco's Regional Sales Director Contract, entered into on May 18,

1994, states in Article XI:

> …If this Agreement is terminated, the RSD's commissions shall continue to be
> paid to the RSD for memberships established prior to the termination of this
> Agreement even though the membership fees are received by AmeriPlan
> subsequent to the termination of this Agreement and will continue for as long as
> these membership fees are received by AmeriPlan.  Notwithstanding the above,
> should the RSD violate any part of Section II (Conduct) herein of this Agreement
> and/or at any time directly or indirectly by his own action or through the actions
> of other, endeavor to induce any RSD or member of AmeriPlan to leave its
> service or its members to relinquish their memberships, its right to the payment of
> continued compensation under this Agreement with AmeriPlan shall immediately
> terminate.[1]

Plaintiffs Gary Downard, Robert John Sharpe, and William Chase Moen's Sales Director

Agreements, entered into on May 7, 1999, July 8, 2001, and July 22, 2004, respectively, all

contain the same language within sections 4.09 and 4.10:

§ 4.09  Rights to Commission After Termination Without Cause:

> Upon termination of this Agreement pursuant to §3.03, AmeriPlan shall pay to
> Sales Director or Permitted Assignees, the Broker's Commission and Monthly
> Builders Bonus as provided in this Article IV, provided Sales Director and
> Permitted Assignees (i) comply with the terms and conditions of the non-
> competitive restrictive covenants provision as set forth in Article V of this
> Agreement, (ii) complies in all respects with the standards, rules, regulations and
> policies set forth in the Broker Manual and (iii) maintains the Broker Agreement
> in good standing."

§ 4.10 Rights to Commission After Termination For Cause:

---

[1] Ev. App. 50.

Upon termination of this Agreement pursuant to §3.04, the obligation of AmeriPlan to pay Broker's Commission and Monthly Builders Bonus provided in this Article IV shall immediately terminate.[2]

According to Defendant AmeriPlan's discovery response, these contracts represent the governing documents between AmeriPlan and the proposed class members.[3]

**<u>Defendants' Representations</u>**

Before and after Plaintiffs and the class members entered into these contracts, Defendants continually represented through marketing materials, conferences, presentations, and other AmeriPlan events that these IBOs would receive their guaranteed lifetime residual income for the books of business that they brought to AmeriPlan.  The representations contained in the following sources, produced by Defendants in response to Plaintiff Robert Sharpe's discovery requests, are reflective of the common theme of Defendants' oral and written representations regarding how RSD's are entitled to lifetime residual income based on commissions they earned while an IBO[4]:

- o ***Pages from AmeriPlan Website, 04/29/2008* (Ev. App. 427):**  "Earn $100,000 in *Lifetime Residual Income* in 2-3 years."  (Emphasis Added)

- o ***Inside AmeriPlan,* From the Editor's Desk (Ev. App. 432):  "**This is a business where the rewards for hard work are substantial, but the operative word is hard. And remember, you are in business for yourself, so the hard work is for you. If we make it a given that hard work and diligence are the keys to success in *building a lifetime of financial freedom*

---

[2] Ev. App. 9, 21, 36.

[3] Ev. App. 184.  In response to Plaintiff Sharpe's Request for Production 16, which requests "All DOCUMENTS that YOU believe govern the relationship between the CLASS MEMBERS and AMERIPLAN during the CLASS PERIOD," Defendant Ameriplan responded, in effective part, "see AmeriPlan's Initial Disclosures, as well as documents Bates-labeled AP SHARPE 1-404, produced herewith."  Such documents only contain Plaintiffs' contracts referenced in Ev. App. 5, 17, 30, and 47.

[4] Ev. App. 168.  In response to Plaintiff Sharpe's Interrogatory No. 4, Defendant AmeriPlan responded in effective part "Dennis Bloom and Daniel Bloom gave presentations across the United States at varying intervals, sometimes up to three to four times a month, during the relevant period. AmeriPlan believes, however, that the content of the presentations would have been consistent with the contemporaneous materials produced and distributed to IBOs by AmeriPlan during the relevant time period."

*for you and your family through the magic of residual income…*" (Emphasis added.)

o **TRAILBLAZERS Publication**[5] **(Ev. App. 433):** "These individuals reached a *lifetime vested residual annual income* of at least $50,000 in 1998."  AP SHARPE 407.

o **"AmeriPlan Has Delivered" (Ev. App. 437): "**And last but not least, we have Delivered time, lifestyle and financial freedom to those thousands of Independent Business Owners that have had the vision to follow the AmeriPlan LASER System.  The thousands that are earning millions, assuring their families of financial security.  And those that have reached the incredible point where they can truly be considered millionaires because of the strength of their *AmeriPlan lifetime residual income*."  (Emphasis added.)

o **Pages from AmeriPlan University 101 Textbook (Ev. App. 438 - 784)**: The AmeriPlan University 101 Textbook is "a course in the basic success skills required to succeed with an AmeriPlan business."  Ev. App. 444.  Further, the "The creation of AmeriPlan University in the year 2001, is one more indication of the incredible amount of human and financial resources that the company is willing to invest to support the success of each and every one of the thousands of fine people from every walk of life who have chosen to build their Time, Lifestyle and Financial Freedom through their own AmeriPlan business and the magic of lifetime residual income."  Ev. App. 445.  Included in this textbook are multiple representations that an IBO is entitled to "lifetime residual income," including the following (Emphasis has been added):

   ▪ "Network Marketing was the best way to carry the testimonials of the members that had used the plan and saved money, and the ever-growing numbers of Independent Business Owners. Owners who were now sharing the savings message with others and generating a significant *lifetime residual income* while doing so."  Ev. App. 453.

   ▪  "Enrolling members is an integral part of building your business and creating a six-figure residual income. Each household membership produces a $5.99 per month *lifetime residual income*, and satisfied members are also great sources for referrals to help build your business."  Ev. App. 459.

   ▪ "Remember, AmeriPlan is a once-in-a-lifetime opportunity, and you must demonstrate a level of excitement that your contacts have never before seen. Ask yourself the question, "How would I act if I just won the lottery?" Because of the *lifetime residual income*, AmeriPlan is better than a lottery."  Ev. App. 472.

   ▪  "Just think where your business would be at the end of a year, if you applied this simple 5-Step Process to at least to one person every day. If you did, you would

---

[5] Interestingly, Plaintiff Cindy Guarisco is listed in this publication as having reached a lifetime residual income.  Of the remaining nineteen persons/couples, eight of them are also included in the proposed class – Carlos Gueits, Jr., Kathy and Ricky Howe, Theresa and Robert Luckett, John Claveloux, Mark Ellis, Nick and Irma Obregon, Rose and Homer Rodriguez, and Ashraf and Flor Sahib.  See Ev. App. 188.

create a *lifetime of substantial Residual Income*. If you did this everyday for the next 3-5 years, you would have a *lifetime of Retirement, Residual Income*!" Ev. App. 481.

▪ "In other words, the pattern of duplication that you set in motion will carry in motion *after you retire from the business*. Therefore, through this dynamics of duplication, *your residual check will continue to grow even after retirement*. That is why we call it *Lifetime Retirement Residual income*! Think of the power of a retirement check that actually increases every month. That is why AmeriPlan is always 'Delivering On The Promise!'" Ev. App. 487.

▪ "I am sure that you will quickly see the potential to find time, lifestyle and financial freedom through *lifetime residual income*." … "Fast Tracking starts by completing ten transactions in your first two weeks; 4 people, like you, that want to build their own independent business and earn a significant *lifetime residual income*…" Ev. App. 499-500.

▪ "The place in which the AmeriPlan motto, 'Delivering on the Promise' has its greatest credibility, is in the time-proven history it has of generating serious, sustainable and significant *lifetime residual income*. For people who have worked at least seven to ten hours a week and have committed to two to four years, a point can be reached where they have a six-figure (or more), *lifetime, residual income*." Ev. App. 513.

▪ "The cornerstone of our compensation plan is the position of Regional Sales Director. To earn the position of RSD, and receive a lifetime-vested contract … Once you are vested, you become a business partner with AmeriPlan. You now have *true equity ownership of your very own business. The commissions are yours for life. They are willable. They are sellable. They are assignable. If you passed away, they would go to your family for generations.*" Ev. App. 515.

▪ "Although the management position of RSD is the cornerstone of our compensation plan and qualifies you for a *lifetime-vested contract*, you must develop front-line RSDs in order to achieve *true financial freedom through lifetime residual income*." Ev. App. 516.

▪ "The Business Builder's Override is your greatest source of *lifetime residual income* and qualifies you for many awards and recognition at AmeriPlan, such as the TrailBlazer Club, Chairman's Residual Income Award and the Founder's Ring Club. AmeriPlan also has the distinction of having the most sustainable *lifetime residual income* in the network marketing industry, maybe anywhere!" Ev. App. 537.

o ***Delivering on the Promise DVD* (Ev. App. 785):**

▪ **"**With AmeriPlan you can get a lifetime vested contract that is both willable and sellable." *Making Money, AmeriPlan Company*, Timestamp 4:12;

- ▪ "This generous AmeriPlan USA Incentive Plan is the reason why the Average National Sales Director makes in excess of $100,000 a year in *permanent, residual income* with AmeriPlan." *Making Money, New Broker Orientation*, Timestamp 5:10.

- o *Save Money, Make Money DVD* **(Ev. App. 786):**

  - ▪ "We will guarantee you financial freedom." Daniel Bloom, *Make Money*, Timestamp 00:22;

  - ▪ "You do the business one time, and AmeriPlan continues to pay you for the life of the business." *Id* at Timestamp 5:30;

  - ▪ "If you build it one time, it will pay you for the rest of your life." *Id* at Timestamp 5:34;

  - ▪ "Give it a chance, you have absolutely nothing to lose." Dennis Bloom, *Id* at Timestamp 6:28;

  - ▪ "Chris & Lacy Gee, $58,000 Lifetime Residual Income AND GROWING!" *Id* at Timestamp 6:36;

  - ▪ "Ron & Nancy Heck, $211,000 Lifetime Residual Income and GROWING!" *Id* at Timestamp 6:40;

  - ▪ "Janie & Michael Jones, $185,000 Lifetime Residual Income and GROWING!" *Id* at Timestamp 6:43;

  - ▪ "Willie & Cynthia Teague, $81,000 Lifetime Residual Income and GROWING!" *Id* at Timestamp 6:51;

  - ▪ "Kenny & Lorene Brown-Watkins $201,000 Lifetime Residual Income and GROWING!" *Id* at Timestamp 6:56;

  - ▪ "Mark & Trace Jarvis $1,358,000 Lifetime Residual Income and GROWING!" *Id* at Timestamp 7:02.

- o **Untitled AmeriPlan DVD (Ev. App. 787):**

  - ▪ "Not just a one time commission, but a lifetime of residual income." Timestamp 1:48;

  - ▪ "People that make more than $100,000 a year in lifetime residual income." Timestamp 3:44;

  - ▪ "People just like you are going to be making more than $100,000 per year or more in lifetime residual income. It could be you if you join us today." Timestamp 5:19.

**Defendants Wrongfully Withhold Promised Lifetime Residual Incomes**

Contrary to their promises, representations, and contractual obligations, Defendants have terminated approximately 7,000 IBOs in the past four years and have cut off payment of their lifetime, residual income totaling at least $5,669,568.94 in restitution alone.  Complaint ¶37, Defendants Notice of Removal p. 5:10-16 [DN 1].  Of these IBO's at least 814 have achieved the level of Regional Sales Director and were terminated without cause.  See Ev. App. 188 - 423, 425 ¶4(a).  Included in this mass termination were the Plaintiffs, all receiving the same form letter terminating their contracts with AmeriPlan.  Ev. App. 53, 80, 107, and 134.  To hold Defendants accountable, Plaintiffs brought the instant class action in the Superior Court of California for the County of Los Angeles on May 21, 2012, alleging multiple causes of action based in contract and tort. See Complaint [DN 1].

Defendants removed the case to this Court on June 25, 2012 under the Class Action Fairness Act of 2005.  [DN 1].  Shortly thereafter, on July 2, 2012, Defendants filed a motion to dismiss or transfer venue to the United States District Court for the Northern District of Texas, Dallas Division.  [DN 10, 11].  The U.S. District Court for the Central District of California ordered this case to be transferred to the above-captioned Court.  [DN 13, 14].  Following transfer, Defendants answered on August 8, 2012.  [DN 18].  After limited discovery on class related issues, Plaintiffs now bring this motion to certify a class of persons that Defendants have harmed by wrongfully withholding the promised lifetime residual income.

## III.    LOCAL RULE 23.2 ELEMENTS

In accordance with Local Civil Rules of the United States District Court for the Northern District of Texas, Rule 23.2, Plaintiffs specify the following:

**(a)    The appropriate sections of Fed. R. Civ. P. 23 under which the suit is properly maintainable as a class action:**

Answer: This suit is maintainable as a class action under FRCP 23(a) and 23(b)(3).

**(b)      Specific factual allegations concerning the alleged class, including:**

*(1)      the approximate number of class members:*

Answer: As further specified herein, the class is estimated to be in excess of 814 persons.

*(2)      the definition of the class and any subclasses:*

Answer: The class should consist of those persons who were Independent Business

Owners ("IBOs") with AmeriPlan that had achieved the ranks of Regional Sales Director

("RSD"), Senior Regional Sales Director, Executive Sales Director, Senior Executive Sales

Director, National Sales Director, Regional Vice President, Senior Regional Vice President,

National Vice President, and/or Senior Executive Vice President, and upon achieving such ranks,

entered into contracts with AmeriPlan confirming their compensation at such rank, which

contracts AmeriPlan subsequently terminated without cause and then ceased paying commissions

to such IBOs after such termination.

*(3)      the distinguishing and common characteristics of class members, such as*
*geography, time, and common financial incentives:*

Answer: Each class member, as an IBO, had achieved at least the level of Regional Sales

Director within the AmeriPlan management promotion levels.  Upon reaching this level, each

member was promised a "lifetime vested contract" which was "willable, sellable, and

assignable" as well as "lifetime residual income" from the class members work.  Each class

member entered into a contract with AmeriPlan.  AmeriPlan terminated each class member

without cause, and upon termination, AmeriPlan stopped paying the class members the promised

"lifetime residual income."  A substantial proportion of the class members were terminated *en*

*masse* in March 2011 via the same form letter, and all of the class members have a common

financial incentive in recovering their "lifetime residual income."

*(4)*      *questions of law and fact that are common to the class:*

Answer:  Common questions of law and/or fact concerning breach of contract and

divestiture of promised lifetime income exist as discussed below.

*(5)*      *in actions asserting a class under Fed. R. Civ. P. 23(b)(3), allegations concerning the findings required by that section:*

Answer: Allegations concerning the findings required by 23(b)(3) are discussed herein.

**(c)      the basis of the named plaintiff's claim to be an adequate representative of the class, including financial responsibility to fund the action:**

Answer: As discussed more fully herein, the Plaintiffs are adequately representative of

the class for the following reasons:

- They had achieved the levels of Executive Sales Director and National Sales Director,

  which represents 58% of the available positions of the class members.  See Ev. App.

  188 – 423, 426;

- They had obtained the level of Regional Sales Director from as early as May 1994;

- They were all terminated on the same date – March 16, 2011;

- They were receiving commission checks at the time of their termination ranging in

  amounts from $2,030.71 to $30,958.89.  See Ev. App. 188 - 423, 426 ¶5.

As to the financial responsibility to fund the action, counsel for Plaintiffs have agreed to

advance costs for this suit.

**(d)      the basis for determining any required jurisdictional amount:**

Answer: As discussed more fully *infra*, according to AmeriPlan's records, the final

commissions paid to the class members, on the dates of their respective dates of termination,

total $4,021,437.68.  Plaintiffs seek damages related to the *lifetime residual income* promised to

them, even if their contracts were terminated without cause.  Plaintiffs believe that the potential

amount of contractual damages alone exceeds $5,000,000.  AmeriPlan has already demonstrated

this in its with the Court.  See Notice of Removal; Declaration of Tracey Brown [DN 1].

**(e)**     **the type and estimated expense of notice to be given to class members, and the source of funds from which notice costs will be paid:**

Answer: Plaintiffs expect Class Counsel to arrange, through a claims servicer, to provide notice to the Class Members by certified mail, return receipt requested.  The estimated expense of providing such notice is approximately $5,000 per mailing in addition to any fees required by a claims servicer.  Plaintiffs expect Class Counsel to advance the costs thereof.

**(f)**     **the discovery necessary for a class certification hearing and the estimated time necessary for such discovery:**

Answer: Plaintiffs served, and Defendants responded to, initial discovery requests related to class certification issues.  Upon a review of Defendant's responses to this initial discovery, Plaintiffs find it necessary to request Defendant to supplement its discovery responses with further information.  Additionally, Plaintiffs estimate that additional written discovery and depositions are needed before a class certification hearing.  The estimated time necessary for such discovery is estimated to be 90 days.

**(g)**     **all arrangements for payment of plaintiffs' attorney's fees:**

Answer: Class Counsel consists of Andrew W. Christman, Dugan P. Kelley, and Kenton S. Brice of Christman Kelley & Clarke, PC and Ross Sears of Sears Crawford, L.P.  Class Counsel have a contingency fee agreement with each Plaintiff.  Class Counsel have agreed to share in any recovery in this action.

## IV.     ACTION SHOULD BE CERTIFIED AS A CLASS ACTION

A plaintiff seeking to represent a class first must satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  Upon this showing, the plaintiff must then show that the case can proceed as a class action under subpart (1), (2), or (3) of Rule 23(b).  Rule 23 as a whole is to be applied liberally, and as determined in the Fifth Circuit, "[i]n light of the fact that Rule

23 provides a district judge with great flexibility to adopt appropriate procedures, certify conditionally, or decertify a class in later stages of litigation, … judges should err in favor of certification." *Medina v. United States*, 208 F.R.D. 148, 166 (W.D. Tex. 2001)(citing *Bywaters v. United States*, 196 F.R.D. 458 (E.D. Tex. 2000)).  As shown herein, the Plaintiffs satisfy all of the requirements of Rule 23(a) and also seek certification under Rule 23(b)(3) for all claims.

### A.    Action Satisfies Requirements of Rule 23(a)

FRCP 23(a) contains four initial requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions or law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  As shown herein, the proposed class and Plaintiffs satisfy each of these requirements.

### *1.    Individual Joinder of All Plaintiffs is Impracticable*

Rule 23(a)(1), as known as the "numerosity" requirement, requires that the class be so numerous that individual joinder of all plaintiffs is impracticable. *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1022 (5th Cir. 1992).  This "numerosity requirement is met if the plaintiff provides some evidence of a reasonable numerical estimate of purported class members." *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888 (N.D. Tex. May 19, 2011)(citing *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)).  "Plaintiff need not demonstrate the precise number in the class to satisfy this requirement." *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 2012 U.S. Dist. LEXIS 24823 (N.D. Tex. Jan. 27, 2012).  *See also,* Newberg on Class Actions, "Prerequisites for Maintaining a Class Action," §3:5, p. 246-47 (4th ed. 2002) (Newberg opines that forty (40) may be used as a presumptive figure satisfying the numerosity requirement).

The proposed class consists of hundreds, if not thousands of persons.  According to the

limited discovery obtained to date, Defendants produced a spreadsheet listing terminated IBO's from May 2008 until the present.  According to Defendant's response to Plaintiff's interrogatories, "[t]here are various reasons for termination listed in column P. for Purpose of this response, '28-Per Legal' represents a no-cause termination."  There are 814 terminated IBO's that are listed on the spreadsheet with the "28-Per Legal" term listed as the reason for their termination.  See Ev. App. 188 - 423, 425 ¶4(a).  There are additional reasons listed in the spreadsheet that may possibly increase the size of the class upon further discovery, including, but not limited to the terms "39-Per Legal", "13-Deceased", "0-No Reason Provided", and "0 – No Reason Provided."  See Ev. App. 188 - 423.

Given the initial definition of a "no-cause" termination (via the same means/letter, same purported reasons, and in the same method), which would include *at least* 814 terminated IBO's and therefore potential class members, joinder of at least 814 persons is impractical.  Further discovery may only see this number increase.  Numerosity as contained in FRCP 23(a) is met.

> 2.   *There Are Questions Of Law And Fact Common To The Members of Each Class*

Next, Rule 23(a)(2) requires the presence of questions of law *or* fact common to all Class members.   Even though issues of commonality are rampant in this matter, the "commonality" threshold is not high.  *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999). Commonality is satisfied "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso,* 118 F.3d 421,426 (5th Cir. 1997); see also *Halliburton Co.*, 2012 U.S. Dist. LEXIS 24823) (citing *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982), "[Commonality] 'does not require complete identity of legal claims among the class members' only that they have 'at least one issue whose resolution will affect all or a significant number of the putative class members.'").

All of Plaintiffs' claims arise from the same set of facts and are based on identical legal theories involving an overarching and uniform course of conduct.  More importantly, Plaintiffs' claims "depend upon a common contention that is capable of classwide resolution," and that contention is "of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).   Here, Plaintiffs allege and will prove that Plaintiffs' claims rest upon one common set of facts to the entire class – that Defendants, through their representations and contracts, promised and agreed that if the class members as IBOs achieved the level of Regional Sales Director (or higher), then they would receive "lifetime vested contracts" that were "willable, sellable and assignable" which guaranteed the class members a "lifetime residual income".  Indeed, this is paradigm pitch made by the Defendants in inducing class members to join AmeriPlan.  Defendants then terminated the class members' status as IBOs without cause, and upon such termination, AmeriPlan failed to continue to pay to Plaintiffs the "lifetime residual income" that Defendants had promised and agreed to pay to Plaintiffs.

This common course of conduct has created a well-defined commonality in the following common questions of law and facts:

- Whether Defendants breached written and oral contracts entered into with the Plaintiffs and Class Members;

- Whether Defendants falsely promised lifetime, vested residual income to the Detriment of Plaintiffs and Class Members;

- Whether Defendants have been unjustly enriched by the justified reliance of the Plaintiffs and Class Members on Defendants misrepresentations;

- Whether Defendants intentionally misrepresented that the Plaintiffs and Class Members were entitled to lifetime, vested residual incomes;

- Whether Defendants negligently misrepresented that the Plaintiffs and Class Members were entitled to lifetime, vested residual incomes;

- Whether Defendants have breached their fiduciary duty to Plaintiffs and Class Members by fraudulently withholding property from Plaintiffs and Class Members;

- Whether Defendants fraudulently omitted and/or fraudulently concealed facts from Plaintiffs and Class Members so to perpetuate a fraud;

- Whether Defendants wrongfully withheld property from Plaintiffs and Class Members so as to deprive them of the use of their property;

Resolution of these issues ultimately rests upon common questions of law and fact, and thus Rule 23(a)(2)'s "commonality" threshold is met.

3. *The Claims Of The Representative Plaintiffs Are Typical Of Those Of The Classes*

Rule 23(a)(3) demands the Class Representatives assert claims that are typical of the class. "The test for typicality, like the test for commonality, is not demanding." *Lightbourn,* 118 F.3d at 426. "The critical inquiry is whether the class representative's claims 'have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Barrie, et al., v. Intervoice-Brite, Inc., et al.,* 2009 U.S. Dist. LEXIS 99253 (N.D. Tex. 2009). (quoting *James v. City of Dallas, et al.,* 254 F.3d 551, 571 (5th Cir. 2001).

Here, the Class Representatives' claims are typical of the class as a whole. All of their claims arise from the same set of conduct – that AmeriPlan represented to them that they would receive a lifetime vested contract that was willable sellable and assignable and guaranteed a lifetime residual income, and then AmeriPlan subsequently terminated the Plaintiffs' vested contract (i.e. their IBO) and stopped paying them the promised lifetime residual income. Furthermore, the Plaintiffs' are a typical, representative segment of the class as a whole in their demographics as former AmeriPlan IBO's[6]:

---

[6]  Of the nine different positions that a class member could have held, of these, 58% of the terminated IBOs were either Executive Sales Directors or National Sales Directors.

| Name | RSD Date | Position When Terminated | State of Residence | Amount of Last Check |
|------|----------|-------------------------|--------------------|-----------------------|
| Robert Sharpe | July 8, 2001 | National Sales Director | California | $30,958.89 |
| Cindy Guarisco | May 18, 1994 | National Sales Director | Texas | $24,657.72 |
| Chase Moen | June 22, 2004 | Executive Sales Director | Texas | $2,030.71 |
| Gary Downard | May 7, 1999 | National Sales Director | Florida | $19,950.81 |

Nothing in this action is unique to the Plaintiffs, as all of the class claims arise from Defendants misconduct that was uniform among the entire class and the Plaintiffs fairly represent the average class member.   Therefore, the typicality requirement has been met.

4.     *The Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Classes*

The "'standard' for the adequacy determination ... requires "an inquiry into [1] the zeal and competence of the representative[s'] counsel  and …[2]  the willingness  and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]"'" *Feder v. Elec. Data Sys.,* 429 F.3d 125, 130 (5th Cir. 2005).  Additionally, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent… '[A] class representative  must be part of the class and "possess  the same interest and suffer the same injury" as the class members.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-626 (U.S. 1997) (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977))(Some internal citations omitted.).  "Therefore, the determination of adequacy involves the proposed  "'class representatives, their counsel, and the relationship between the two.'" *Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir. 2002).

Class Counsel are members in good standing of their respective state bars, have extensive

---

Furthermore, of the 814, more than 41% come from California (5.53%), Florida (17.20%), and Texas (18.92%) combined.  Lastly, the final amount of individual checks paid to class members range anywhere from $9.43 to $244,526.04 with an average check of $5,026.80.  Ev. App. 188-423, 425-426.  The amount of damage is not a question as it is readily ascertainable and AmeriPlan has served initial damage estimates on Class Counsel.

background in prosecuting complex consumer fraud and class actions claims, including claims already brought against AmeriPlan, and have combined to deploy the substantial legal and financial resources necessary to prosecute this action to its conclusion.  As shown in their firm resumes, Ev. App. 788-795, the attorneys with Christman Kelley & Clarke, PC, as well as Ross Sears, have a breadth and depth of experience that qualifies them as experienced and generally able counsel to conduct this litigation.

The Plaintiff's interests are co-extensive and not antagonistic to those of the class.  The Plaintiffs and each class member have been subject to the same conduct of the Defendants and seek the same relief - a recovery for the Defendants' wrongful withholding of their promised lifetime residual income.  Furthermore, as shown in the Plaintiffs' declarations, they have indicated their commitment to bring about the best result possible from this litigation for all class members by subjecting themselves to written discovery requests and depositions, appearing and possibly testifying at trial, and by retaining experienced, competent counsel.  Ev. App. 1, 13, 26. Accordingly, the adequacy requirement is fulfilled as to the Plaintiffs.

## V.     THIS ACTION SATISFIES FRCP 23(B)(3)

Rule 23(b)(3) permits maintenance of a class action if "[1] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  In performing this analysis, the Court must consider "how the matter will be tried on the merits, which entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *In re Katrina Canal Breaches*, 401 Fed. Appx. 884, 886 (5th Cir. 2010) (quoting *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010)) (internal quotation marks omitted).  As shown herein, common

issues of fact and law predominated over any individual questions and that a class action is the superior method of ensuring fair and efficient adjudication of the claims asserted in Plaintiffs' Complaint against Defendants.

### A.     Common Questions of Law and Fact Predominate

Predominance, in the context of Rule 23, requires that the issues or defenses claimed on behalf of the class be superior to, and unencumbered by, any individual claims or defenses that may affect the lawsuit.  "Predominance of common questions of law or fact under Rule 23(b)(3) is not a numbers game. The true test is whether common or individual questions will be the object of most of the efforts of the litigants and the Court. … Though there may be several individual questions present, if the basic issue is still common and pervasive, class status is appropriate." *Republic Nat'l Bank v. Denton & Anderson Co.*, 68 F.R.D. 208, 215 (N.D. Tex. 1975).  Furthermore, "[t]he predominance requirement serves two functions. It assures a court that adjudicating related claims in a single proceeding will conserve resources and yield economies of scale. It also protects absent plaintiffs' rights to due process by showing that a class is cohesive." *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 955 (E.D. Tex. 2000).

The basic issues in this case are common and pervasive among the entire class making this suit ripe for class status.  The common core of the Complaint is premised on one central issue – that AmeriPlan terminated Plaintiffs and the class members without cause, and upon termination, wrongfully cut-off lifetime residual commissions and terminated the businesses owned by Plaintiffs and class members.  Upon this one central issue lie the legal and factual questions in this suit that are uniform for all class members, including questions related to: (1) widespread and uniform breach of contract affecting the entire class; (2) fraudulent statements and omissions that were part of mass training and marketing to all IBOs, including the plaintiffs and the putative class, and a common course of conduct to induce the class to perform services

for Defendants' profit; (3) Class Members and Defendants' relationship and whether it rose to a

fiduciary relationship; and (4) whether Defendants' converted the Class Members "lifetime

residual income" by collecting and failing to pay commissions after terminating the Class

Members without cause.  Because the entire class was subjected to the same breach of contract

(the terminations were uniform mass mailings), fraudulent course of conduct, relationship with

Defendants, and wrongful withholding of owed commissions, common questions of law or fact

predominate.  *Durrett v. John Deere Co.,* 150 F.R.D. 555, 560 (N.D. Tex. 1993).

## 1.    *Breach of Contract Claims*

Plaintiffs have asserted multiple contractual causes of action based on similar, if not

identical, contracts entered into between AmeriPlan and the class members.  A breach of contract

action consists of "(1) the existence of a valid contract; (2) performance or tendered performance

by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff

resulting from that breach."  *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App. El Paso 2009).

Plaintiffs' contractual claims rest on one predominate issue – whether AmeriPlan is

obligated by contract to continue to pay class members commissions after a no-cause

termination.  No matter what contract-based cause of action is tried, this predominant question is

common to the entire class and will be the central object of this litigation.

While the written contracts that AmeriPlan has used in the past twenty years have

changed in format and in limited substance, provisions regarding termination and the lasting

effect on lifetime residual commissions have not.  Courts have routinely held that class

certification is appropriate on breach of contract claims even if there are multiple versions of a

contract as long as the substance of the provisions that were alleged breached were not materially

different.  See *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. Fla. 2003) (Finding

common issues predominated based on multiple dealer agreements that were materially similar.);

See also *Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566 (D.N.H. 1973) (Court opined that because multiple dealer supply contracts all contain the same basic features, the issues of liability are not only common, but "identical" to the entire class.); see also *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32, 38 (E.D. Pa. 1985) (Interpretation of differing lease agreements presented "issues common to the class members because all of the leases contain essentially the same terms."); See also *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003)("The fact that not all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present.)"

Throughout the years, the differing agreements have all included provisions for termination of the contracts and continuation of commissions after termination.  Noticeably missing from every contract is *any* provision for an RSD's promised "lifetime residual income" through commissions to be terminated in connection with a "no-cause" termination.  The plain language of every variation of the "Sales Director Contract" shows that a common question exists as to whether the commissions earned by class members are to continue and survive post "no-cause" termination.  Every single class member has one question on their mind: If I owned my own IBO with a vested and lifetime residual income, how can AmeriPlan do this to me?  This one issue common to the entire class predominates, and once resolved, all other issues related to the contract will fall into place.

In addition to breach of written contracts, Plaintiffs have alternatively pled claims for breach of oral contract.  As shown herein, Defendants made multiple representations that could be deemed to be oral contracts.  Whether Defendants' representations (i.e. "achieve RSD status and you will receive lifetime residual income") and the class members' performance (achieving RSD status) created an oral contract for Defendants to perform by continuing to pay

commissions after termination is predominant to the class.  All other issues of breach of oral contract are either subsumed into this question or are related to a question of damages – which, as shown below, do not defeat a finding of predominance under FRCP 23(b)(3).

If the Court were to find no written contract or oral contract obligating Defendants to pay the class members a "lifetime residual income," questions common to Plaintiffs' allegations of promissory estoppel and unjust enrichment are common to the entire class.  There is nothing unique to any individual class member.  Each class member was promised the same deal – if they would achieve the rank of RSD, they would receive a "lifetime vested contract" that included "lifetime residual income".  Whether the class members are entitled to the benefits of this promised "deal" is an issue that predominates over all other quasi-contract issues.

For the contract actions against Defendants, the focus and attention of this litigation will rest upon the central issue of whether AmeriPlan was contractually obligated to pay the class members commissions after a no-cause termination.  This will be determined by the written contracts, any oral contract, or equitable theories of contractual obligations.  This central issue predominates the claims of any individual class member.

## 2.    Fraud Claims

In addition to the contract claims, Plaintiffs allege multiple fraud based actions against Defendants' for Defendants' widespread common course of conduct to fraudulently induce the class members to build Defendants' business based upon a promised reward, and then never honoring those representations, profiting immensely from the class's work.  Under FRCP 23, claims of fraud based on widespread, common and uniform representations are ripe for class action status.  "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals

within the class." FRCP 23 *Advisory Committee's Office Note (1966 Amendments).*

Plaintiffs' fraud based tort claims – intentional misrepresentation, negligent misrepresentation, constructive fraud, false promise, and concealment – are all based on Defendants' mass representations that once the class members reached a certain level of achievement as an IBO, that Defendants would guarantee "financial freedom" through "lifetime residual income" through a "lifetime vested contract."  These representations were made to all IBOs to induce the IBOs to sell Defendants' products throughout AmeriPlan's existence.  These representations lulled the Class Members into believing the truth of those representations.  These representations are the central (if not only) reasons every Class Member entered into a contract with AmeriPlan.  Defendants made these representations consistently (without wavering) from this script through oral presentations, video marketing, advertisements, promotional materials, and in training materials.

Common issues predominate as to Defendants' representations to class members that they would receive a "lifetime vested contract" that was "willable, sellable, and assignable" which ensured a "lifetime residual income", and that class members relied on these representations to begin working for Defendants to their ultimate detriment.  There is no doubt that Defendants made these representations and that the representations were part of a massive common theme akin to false advertising.

While many courts find that fraud claims sounding in intentional misrepresentation are deficient for class certification based on issues of individual reliance, this case is a unique set of facts that warrant an inference of reliance based on Defendants' representations made to the class as a whole through a common theme – that if the class were to perform for Defendants at a certain level, they could achieve a "lifetime residual income".  Reliance can be inferred from the

class's actual performance – no reasonable person would work towards a stated goal without relying on the veracity of the representations regarding that goal.  The *entire goal* for every Class Member of entering into a contract with AmeriPlan was to achieve this "lifetime residual income stream" that could never be taken away.

Individual reliance is not at issue in this case.  Defendants' representations regarding the gold nugget of a "lifetime vested contract" that including "lifetime residual income" if IBOs achieved RSD status were common among the entire class through written and oral communications, and the class members acted upon such representations, achieving RSD status. The only questions that must be decided are whether Defendants made these representations with the intent to never perform (intentional misrepresentation) or whether Defendants did not exercise reasonable care or competence in making the representations (negligent misrepresentation).  There is not a dispute over whether these representations induced Class Members to enter into the contracts with AmeriPlan.  Rather the focus is only on whether the misrepresentations were intentional or negligent - a predominate question common to the class.

### 3.    *Breach of Fiduciary Duty*

Plaintiffs' claim of fiduciary duty rests upon predominant issues common to the entire class – whether AmeriPlan, through its' relationships with its IBOs that attain RSD status, have fiduciary relationships with Plaintiffs and the class members, and if so, whether AmeriPlan breached its duty by failing to continue to pay to Plaintiffs and the class members a "lifetime residual income" as promised.  A claim for breach of fiduciary duty consists of the following elements: "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App. Dallas 2010).

Each element to be tried within this claim is common to the entire class.  First, whether the relationship of the class members with AmeriPlan creates a fiduciary one, as every class member had the same relationship with AmeriPlan – an Independent Business Owner that had achieved at least the rank of Regional Sales Director.  Second, whether AmeriPlan's failure to pay the promised "lifetime residual income" after termination without cause is a breach of that duty.  Third, whether AmeriPlan's actions have resulted in an injury to the class as well as a benefit for AmeriPlan, as AmeriPlan has greatly profited from withholding the class's earned commissions.  Every issue within the Plaintiffs' claims for breach of fiduciary duty are common to the entire class and predominate over any individual class members issues related to Plaintiffs' allegations of breach of fiduciary duty.

4.      *Conversion*

Lastly, issues contained in Plaintiffs' allegations of conversion are based on the common issue of whether the class members are entitled to commissions post-termination without cause. "The elements of a conversion cause of action are: (1) plaintiff … was entitled to possession of … property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App. Dallas 2009). "[T]he demand and refusal elements of conversion are not required if other evidence establishes an act of conversion." *Burns v. Rochon*, 190 S.W.3d 263, 270 (Tex. App. Houston 2006).

The sole issue regarding conversion is common to the entire class – whether the class members were entitled to possession of their commissions after AmeriPlan terminated them without cause.  All other issues of conversion will flow from the resolution of this common issue.  Therefore, this common question predominates over all other issues related to conversion.

>    5.    *Damages*

The issue of damages is common to the class members as a whole.  Damages are all related to Defendants' failure to continue to pay "lifetime residual incomes" to the class members.  Such damages are easily ascertained through the discovery process and through a formula taking into account the class member's age, commissions at termination, average attrition rates, and other criteria as the Court sees fit.  Such a foundation for such damage calculations are readily ascertainable for the wrongful taking of residual income belonging to the Class Members is set forth in the spreadsheet provided by Defendants in Ev. App. 188-424.

> **B.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Action**

A class action is the superior method for resolving plaintiffs' claims because it will provide the most fair and efficient method of adjudication.  Certifying a class will allow for the efficient allocation of judicial resources as it allows for common claims, which predominate every area of this suit, to be tried once with binding effect on all parties.  Additionally, Class certification is the only way to afford relief to those plaintiffs whose claims are too small to permit them to bring individual lawsuits.  *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000).  114 of the 814 potential class members final commission checks were under $1,000, and 614 of the 814 had final commission checks under $5,000.  Ev. App. 425.  The costs of individual lawsuits and attorneys fees related to the potential recovery would bar most class members from bringing individual suits.  A class action would bring recovery for these otherwise out of luck individuals.

Finally, "aside from the usual complexities encountered in class action litigations, there are few exceptional difficulties from litigating these claims as a class instead of individually." *In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 571 (E.D. Tex. 2005).  This is not a

complex case.  Each class member was in the same position as the other – an IBO that had

attained at least the rank of RSD, and was damaged by the common course of conduct of

Defendants – losing their promised "lifetime vested contract" and "lifetime residual income."

Therefore, a class action is the superior method through which plaintiffs should pursue their

claims on behalf of the class would afford the most efficient judicial process for the entire class.

## VI.    CONCLUSION

Upon the foregoing, because the proposed class meets the requirements of Rule 23, and

because Robert John Sharpe, Cindy Guarisco, Chase Moen, and Gary Downard will adequately

pursue common class interests, Plaintiffs respectfully request this Court appoint Robert John

Sharpe, Cindy Guarisco, Chase Moen, and Gary Downard as Class Representatives and certify a

class of all persons as requested herein.

Respectfully Submitted,

CHRISTMAN KELLEY & CLARKE, PC

/s/ Kenton S. Brice
Andrew W. Christman (SBN 24066729)
Dugan P. Kelley (SBN 24066627)
Kenton S. Brice (SBN 24069415)
Attorneys for Plaintiffs


SEARS CRAWFORD, L.L.P.

/s/ Ross Sears, II
Ross A. Sears, II (SBN 17960011)
Attorney for Plaintiffs

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of November, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

/s/ Kenton S. Brice
Kenton S. Brice

Byron K. Henry
Kathryne M. Morris
Attorneys for Defendants
Cowles & Thompson, P.C.
Bank of America Plaza
901 Main Street, Suite 3900
Dallas, Texas 75202
214.672.2156
214.672.2356fax
bhenry@cowlesthompson.com