IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ROBERT JOHN SHARPE, CINDY GUARISCO, WILLIAM CHASE MOEN, GARY DOWNARD, for themselves as individuals and on behalf of themselves and all others similarly situated,** | § § § § § § § § § § § § § § § § | **CIVIL ACTION NO: 3:12-CV-02542-O** |
| Plaintiffs, | | |
| v. | | |
| **AMERIPLAN Corporation, a Texas Corporation, DENNIS BLOOM, an individual, DANIEL BLOOM, an individual, and DOES 1-100 inclusive,** | | |
| Defendants. | | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's *Order Referring Motion* (Doc. 42), Defendants' *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff William Chase Moen* (Doc. 32), *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Robert John Sharpe* (Doc. 34), *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Cindy Guarisco* (Doc. 36), and *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Gary Downard* (Doc. 38) have been referred to the undersigned for findings, conclusions, and recommendation. After reviewing the motions, relevant pleadings and applicable law, the Court recommends that the motions be **GRANTED IN PART**.

## I. BACKGROUND

This case was filed by Plaintiffs Robert John Sharpe, Cindy Guarisco, William Chase Moen, and Gary Downard (collectively "Plaintiffs") on May 21, 2012, in the Superior Court for the County of Los Angeles. (Doc. 1 at 2). On June 25, 2012, Defendants AmeriPlan

Case 3:12-cv-02542-O   Document 52   Filed 04/17/13   Page 2 of 16   PageID 2019

Corporation, Daniel Bloom, and Dennis Bloom (collectively "Defendants") filed a Notice of Removal to the United States District Court for the Central District of California. *Id*. The District Court granted Defendants' subsequent motion to transfer venue to the Northern District of Texas on July 25, 2012. (Doc. 14). Defendants then filed a Motion to Compel Arbitration and Dismiss or Stay Litigation with supporting brief as to each individual Plaintiff on January 17–18, 2013. (Docs. 32–39).

### *A. Relevant Facts*

Plaintiffs were independent contractors employed by AmeriPlan Corporation ("AmeriPlan") to sell memberships in discount dental, vision and other health plans. (Doc. 45 at 7). Plaintiffs were part of a network of "Independent Business Owners" ("IBOs") who sold these memberships to consumers and recruited other IBOs to do the same. *Id*. AmeriPlan promised that IBOs could achieve the rank of "Sales Director" if they fulfilled certain criteria, and as a result, would become vested in "lifetime residual income" that was "willable, sellable, and transferable." *Id*. This residual income was to be generated through commissions earned by each Sales Director's "down line," i.e., the IBOs recruited by each Sales Director. *Id*. Plaintiffs had each achieved Sales Director status before their contracts were terminated by AmeriPlan. *Id*. at 9.

The relationship between Plaintiffs and AmeriPlan was governed by three documents: the Broker Application Agreement ("BAA"), the Sales Director Agreement ("SDA"), and the AmeriPlan Corporate Broker Policies and Procedures Manual ("PPM"). (Doc. 33 at 2). The PPM was incorporated by reference into the BAA and the SDA, and each of the Plaintiffs agreed to comply with any and all amendments, modifications or revisions to the PPM made by AmeriPlan. (Doc. 33 at 2–3; Doc. 35 at 2; Doc. 37 at 3; Doc. 39 at 2–3).

On November 15, 2010, AmeriPlan released an updated version of the PPM containing an arbitration clause.[1]  (Doc. 33 at 3).  The clause required that all AmeriPlan employees and contractors submit any "issue, dispute, claim or controversy . . . arising out of or relating to" the BAA, SDA, or PPM to binding arbitration at AmeriPlan headquarters in Plano, Texas.  *Id.*  Other relevant provisions of the arbitration clause provided that: 1) all parties to the arbitration must bear their own expenses, including arbitrator's and attorney's fees; 2) any award to an IBO/Sales Director will be strictly limited to actual damages; 3) a material breach occurs if either party circumvents the arbitration clause by seeking remedies through a court of law, and "the breaching party shall bare [*sic*] all costs of court, attorney's fees, and other fees arising from the breach"; and 4) as a "condition precedent" to filing a claim, the claimant and respondent are each required to deposit $25,000 cash into an escrow account, which shall be applied to the costs of arbitration.  (Doc. 33-1 at 20).  The PPM also contains a severability clause providing that any unenforceable provisions will not invalidate the remainder of the PPM.  *Id.*

The Sales Directors were asked to agree to the terms of the revised PPM by clicking a button marked "I Agree" on AmeriPlan's IBO Support Website.  (Doc. 33 at 3).  AmeriPlan made continued access to each Sales Director's "back office"[2] contingent upon the Sales Director's agreement to the revised PPM.  (Doc. 45 at 10–11).  Plaintiffs Moen and Sharpe each consented to the terms of the revised PPM by clicking "I Agree" on the IBO Support Website. (Doc. 33 at 3; Doc. 35 at 3).  Plaintiffs Guarisco and Downard never logged on to the website to view the PPM, though Ameriplan sent them a letter in 2010 explaining that the PPM had been updated, along with a paper copy of the new PPM.  (Doc. 37 at 4; Doc. 39 at 4).

---

[1] AmeriPlan released another version of the PPM with an identical arbitration clause on February 3, 2011. (Doc. 37 at 3).

[2] "The back office is a web-based internal business record keeping system that IBOs and Sales Directors pay to have access to, which houses . . . downline information, membership enrollments, AmeriPlan marketing material, etc." (Doc. 45 at 11).

AmeriPlan terminated Plaintiffs without cause on February 14, 2011, along with approximately 800 other Sales Directors. (Doc. 45 at 9). After issuing one final commission check, AmeriPlan ceased paying the residual income generated by the Sales Directors' "down lines" on March 16, 2011. *Id.* Plaintiffs filed suit against Defendants on May 21, 2012, alleging, *inter alia*, that the promised "lifetime, vested residual income" was a misrepresentation. (Doc. 1 at 4).

### *B. Issues Presented*

Defendants seek to compel arbitration pursuant to the PPM, and either dismiss or stay pending litigation as to each Plaintiff until final resolution by an arbitrator. (Doc. 33 at 9; Doc. 35 at 9; Doc. 37 at 9; Doc. 39 at 9). Plaintiffs counter that Defendants have not proven the existence of a valid, enforceable arbitration agreement, or that the dispute in question falls within the scope of such an agreement. (Doc. 45 at 12). Further, Plaintiffs aver that the arbitration clause is unenforceable because it is unconscionable and that Defendants waived arbitration by invoking the judicial process. *Id.* Thus, the Court now considers (1) whether there is a valid agreement between the parties to arbitrate the dispute; (2) whether the dispute falls within the scope of the agreement; (3) whether the agreement itself or any provisions thereof are unconscionable and therefore unenforceable; and (4) whether Defendants waived arbitration by invoking the judicial process.

## II. ANALYSIS

### *A. The Arbitration Agreement*

The purpose of the Federal Arbitration Act (FAA) is to promote federal public policy in encouraging arbitration, and to ensure that arbitration agreements are enforced like any other contract. 9 U.S.C. § 2 (2012); *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82

(2008). The FAA dictates that any doubts concerning the scope of arbitration should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Accordingly, once a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).

When considering a motion to compel arbitration, a court determines (1) the existence of a valid agreement among the parties to arbitrate the dispute, and (2) whether the dispute falls within the scope of the agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). To determine whether an arbitration agreement is valid, courts apply ordinary state-law principles governing the formation of contract. *Carey*, 669 F.3d at 205.

<u>Validity</u>

Plaintiffs argue that the agreement to arbitrate is invalid because: (1) the agreements originally executed between the parties do not include an arbitration clause; (2) the revised PPM is not a valid modification of the executed agreements because there was no "meeting of the minds;" (3) there was no consideration to support the arbitration provision; (4) the arbitration clause is illusory; (5) unilateral changes to a substantive contract provision are not effective modifications; and (6) Plaintiffs did not knowingly waive their right to a jury trial. (Doc. 45 at 13–19).

While the original documents executed by Plaintiffs did not contain an arbitration provision, AmeriPlan expressly reserved the right to amend, modify or revise the PPM within its sole discretion, and Plaintiffs agreed to comply with any such changes when they executed the

original SDA.³  (Doc. 49 at 2).  Thus, the "meeting of the minds" -- the "parties' mutual understanding and assent to the expression of their agreement" -- occurred when the parties consented to the subject matter of the agreement and all its essential terms by executing the SDA.  *See Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999).  AmeriPlan was not required to meet individually with approximately 800 Sales Directors to bargain for acceptance of the updated PPM each time it was revised; it was only necessary that AmeriPlan provide notice of the revisions.  *See In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (party asserting change to at-will employment contract need only prove notice and acceptance of the change).  Moreover, AmeriPlan was not required to provide any additional consideration to Plaintiffs, because a mutual agreement to arbitrate constitutes sufficient consideration to support an arbitration agreement.  *See In re Palm Harbor Homes*, 195 S.W.3d 672, 676 (Tex. 2006) (consideration may take the form of a bilateral promise to arbitrate).

      Plaintiffs argue that the agreement to arbitrate is illusory because the language is "one-sided" and favors AmeriPlan.  (Doc. 45 at 17).  Under Texas law, an arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the arbitration provision or terminating it altogether.  *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (citing *Halliburton,* 80 S.W.3d at 570).  The arbitration clause in question cannot be considered illusory because the parties are mutually bound by the agreement to arbitrate.  *See id*.  Moreover, AmeriPlan is prevented from unilaterally avoiding the agreement by the "*Halliburton*-type

---

³ Section 2.03 of the SDA: "Sales Director covenants and agrees to comply with the standards, rules, regulations and policies as set forth in the AmeriPlan Corporation Broker Policies and Procedures Manual *which may be hereinafter amended, modified or revised in the sole discretion of AmeriPlan* . . . which is incorporated in to [*sic*] this Agreement by reference as if fully set forth herein and Sales Director further covenants and agrees *to obtain and comply with any and all such amendments, modifications or revisions* in the Broker Manual, which may be hereinafter made by AmeriPlan." (Doc. 33-1 at 5) (emphasis added).

savings clause"[4] found in Paragraphs (j) and (k) of the arbitration clause. (Doc. 33-1 at 20). Likewise, Plaintiffs' argument that unilateral changes to substantive contract provisions are not effective to modify the agreement is wholly unsupported by reference to applicable law. (Doc. 45 at 18).

Plaintiffs also argue that the agreement to arbitrate is ambiguous because the documents contain two conflicting provisions, one in the SDA requiring claimants to settle disputes in Texas courts, and one in the arbitration clause requiring claimants to submit claims to binding arbitration. (Doc. 45 at 19). However, a contract is not ambiguous if it can be given a definite meaning as a matter of law. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The SDA provides that the agreement is "subject to and governed by the laws of the State of Texas" and sets the venue for "any legal proceeding relating to or arising out of" the SDA. (Doc. 33-1 at 11). The arbitration clause provides that "any issue, dispute, claim or controversy . . . arising out of or relating to [the agreements] shall be resolved by binding arbitration . . ." (Doc. 33-1 at 20). The SDA provision does not require that any claims against AmeriPlan must be pursued in the form of "legal proceedings"; rather, it merely designates the venue for any such proceedings. The arbitration provision, on the other hand, requires that certain claims be submitted to binding arbitration. There is no inherent conflict between these provisions, and each can be given definite meaning as a matter of law. Thus, there is no ambiguity in the agreement to arbitrate.

Finally, Plaintiffs argue that their agreement to be bound by the SDA and PPM did not constitute a knowing waiver of their constitutional right to a jury trial. Under Texas law, a party waives its right to a jury trial when it agrees to resolve disputes through arbitration rather than

---

[4] In *Halliburton*, the Supreme Court of Texas held that an arbitration agreement was not illusory because it contained a "savings clause" consisting of a ten-day notice provision and a requirement that any amendments would apply prospectively, preventing the employer from avoiding the promise to arbitrate. 80 S.W.3d at 570.

judicial proceedings. *In re Wells Fargo Bank Minn. N.A.*, 115 S.W.3d 600, 607 (Tex. App.—Hous. [14th Dist.] 2003). Consequently, the right to a jury trial "vanishes" when claims enter an arbitral forum pursuant to an agreement to arbitrate. *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 922 (N.D. Tex. 2000) ("The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court.") (quoting *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997)). Knowing waiver of this right is not required by Texas or federal law, and the lack thereof does not affect the validity of the agreement to arbitrate.

Scope

The dispute in the present case is clearly within the scope of the arbitration agreement. The arbitration provision in the PPM states that any "issue, dispute, claim or controversy . . . between AmeriPlan or any officer, director, employee . . . [and] IBO/Sales Director, arising out of or relating to the Policies and Procedures Manual then in effect, the IBO and/or Sales Director Agreements, or any other documents, shall be resolved by binding arbitration at the AmeriPlan headquarters in Plano, Texas." (Doc. 33-1 at 20). Plaintiffs' claims are based in large part on the express language in the BAA, SDA and PPM. (Doc. 1 at 10–32). Because the plain language of the arbitration clause makes claims "arising out of or relating to" the SDA and PPM subject to binding arbitration, Plaintiffs' claims related to the business relationship governed by these documents fall squarely within the scope of the agreement.

### B. Unconscionability

Arbitration agreements, like other contracts, are subject to contract defenses such as fraud, duress or unconscionability. *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). A court may not enforce an arbitration agreement if the agreement was unconscionable

at the time it was made. TEX. CIV. PRAC. & REM. CODE § 171.022; *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Unconscionability has two distinct aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *Halliburton*, 80 S.W.3d at 571. Courts may consider both procedural and substantive unconscionability in evaluating the validity of an arbitration clause. *Id.* at 572.

Procedural Unconscionability

Procedural unconscionability is concerned with assent and focuses on the facts surrounding the bargaining process. *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 301 (Tex. App.—San Antonio 2008). The principles of unconscionability are applied to "prevent unfair surprise or oppression." *Palm Harbor Homes*, 195 S.W.3d at 679. Thus, an agreement is not procedurally unconscionable merely because one party may have been in a "less advantageous bargaining position." *Id.* For example, it is not procedurally unconscionable to premise continued employment on the acceptance of an arbitration provision. *Halliburton*, 80 S.W.3d at 572.

Plaintiffs argue that the arbitration clause in the PPM was procedurally unconscionable because: (1) Plaintiffs did not consent to the arbitration clause; (2) Plaintiffs were never notified and were unaware that the updated PPM contained an arbitration clause; and (3) Plaintiffs did not receive any consideration in return for their consent to the updated PPM. (Doc. 45 at 23–24). However, it is undisputed that each of the Plaintiffs agreed to comply with any and all amendments, modifications or revisions to the PPM, which was incorporated by reference into the BAA and SDA signed by the Plaintiffs. (Doc. 33 at 3; Doc. 35 at 2; Doc. 37 at 3; Doc. 39 at 2). Further, Plaintiffs Moen and Sharpe were notified that the PPM had been updated and both

agreed to the terms and conditions of the revised PPM after being provided with an electronic copy.  (Doc. 33 at 3; Doc. 35 at 3).  Likewise, Plaintiffs Guarisco and Downard were mailed paper copies of the updated PPM with a letter indicating that the PPM had been revised.  (Doc. 37 at 4; Doc. 39 at 4).

Plaintiffs cannot claim unconscionability merely because they were not expressly informed of the existence of a conspicuous and unambiguous arbitration clause.  *See In re Green Tree Servicing LLC*, 275 S.W.3d 592, 603 (Tex. App.—Texarkana 2008) ("Absent a duty to disclose, an agreement is not unconscionable merely because one party was not informed of the arbitration clause."); *In re MHI P'ship, Ltd.*, 14-07-00851-CV, 2008 WL 2262157, at *5 (Tex. App.—Hous. [14th Dist.] May 29, 2008) ("Claims of lack of sophistication, lack of explanation, and lack of time to review a contract containing a conspicuous and unambiguous arbitration provision do not trump the strongly favored status of arbitration under the FAA.").  The arbitration clause—situated beneath the underlined subheading "Arbitration of Disputes" in the PPM—was clearly marked.  (Doc. 33-1 at 20).  AmeriPlan was not required to do more.  Plaintiffs' failure to read the agreement does not render it procedurally unconscionable.  *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

As stated above, a bilateral agreement to arbitrate claims is sufficient consideration to support an arbitration agreement.  *Palm Harbor Homes*, 195 S.W.3d at 676.  Because Plaintiffs and AmeriPlan were mutually bound by the agreement to arbitrate, AmeriPlan was not required to provide any additional consideration to Plaintiffs.  Thus, Plaintiffs' agreement to the arbitration clause was not procedurally unconscionable.

Substantive Unconscionability

Substantive unconscionability refers to "whether the arbitration provision ensures preservation of the substantive rights and remedies of the litigant." *Odyssey Healthcare*, 310 S.W.3d at 422 (citing *Halliburton*, 80 S.W.3d at 572). Both the United States and Texas Supreme Courts have recognized that excessive costs of arbitration are sufficient to render an arbitration clause unenforceable. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91 (2000); *Poly-Am.*, 262 S.W.3d at 356. A claimant prevented by excessive costs from pursuing his claim through arbitration is caught "between the proverbial rock and a hard place," *Shankle v. B-G Maint. Mgmt. of Col., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999); he is prohibited from pursuing his claim in the judicial forum by the agreement to arbitrate, while prohibitive costs substantially limit his use of the arbitral forum. *Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F. Supp. 2d 688, 693 (N.D. Tex. 1999) ("[A]n arbitration agreement that prohibits the use of the judicial forum must also provide an effective and accessible alternative forum.") (quoting *Shankle*, 163 F.3d at 1235.)). Mere mutuality of obligation in regard to excessive costs will not render the amount owed fair, reasonable, or conscionable. *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 216 (Tex. App.—San Antonio 2005). To avoid arbitration based on the unconscionability of excessive cost, the party opposing arbitration must show that its ability to pursue the claim in the arbitral forum "hinges upon" the payment of the estimated costs. *Poly-Am.*, 262 S.W.3d at 356. Thus, said party "bears the burden of proving the likelihood of incurring such costs, and must provide some specific information" related to those costs. *Odyssey Healthcare*, 310 S.W.3d at 422.

Here, the arbitration clause provides that any party alleging a claim against AmeriPlan "is required to deposit $25,000.00 cash into an escrow account" to be "applied to the costs of the


arbitration" as a "condition precedent" to filing a claim. (Doc. 33-1 at 20). In addition, all parties "shall bear their own expenses of the arbitration, including those related to the arbitrators, attorney's fees, experts, and presentation of proof with respect to the Claim." *Id*. Any award granted through the arbitration process is "strictly limited . . . to actual damages," and the agreement imposes a penalty of sorts against any party who seeks remedies through a court of law, requiring the claimant to bear all costs and fees arising from the claim. *Id*. As a result, Plaintiffs are inextricably trapped between the aforementioned "rock and a hard place"—if they choose to test the validity of the arbitration provision in court, they face exorbitant litigation costs; contrariwise, pursuing a limited damages award in arbitration requires that Plaintiffs pay a large advance deposit and their own share of arbitration fees, which could be substantial.

      Defendants have thus limited the amount of damages that Plaintiffs can actually recover, while simultaneously impeding Plaintiffs' access to any forum that could award damages. The description of the $25,000 cash deposit as a "condition precedent" to filing a claim is a clear indication that Plaintiffs' ability to pursue their claims in the arbitral forum "hinges upon" this sizeable deposit. *See Poly-Am.*, 262 S.W.3d at 356. Consequently, Plaintiffs have demonstrated more than the requisite "likelihood" that such a deposit will be incurred (*see Odyssey Healthcare*, 310 S.W.3d at 422), because the plain language of the arbitration agreement makes such deposit a necessary condition to arbitration. The fact that AmeriPlan is similarly bound to make a deposit does not render the provision conscionable. *See Olshan*, 180 S.W.3d at 216. A $25,000 cash deposit would represent a significant financial burden for many individuals, and is likely particularly burdensome to Plaintiffs because AmeriPlan has ceased paying any residual "downline" income. (Doc. 45 at 9, 26). Though the arbitrator could theoretically shift the costs of arbitration by awarding costs to Plaintiffs if they are successful on the merits, this *ex post*

*facto* fee-shifting would do nothing to clear the $25,000 roadblock standing between each Plaintiff and the arbitral forum, and "it is unlikely that [a claimant] will risk advancing . . . fees to access the arbitral forum when faced with a mere possibility of being reimbursed."[5] *Fujitsu*, 81 F. Supp. 2d at 693.

Thus, the Court finds that the provisions of the arbitration clause requiring claimants to deposit $25,000 cash in escrow as a condition precedent to filing a claim was unconscionable at the time the agreement was made, and are therefore unenforceable. *See* TEX. CIV. PRAC. & REM. CODE § 171.022. An unconscionable provision of an arbitration agreement may generally be severed, so long as it does not constitute the essential purpose of the agreement. *Poly-Am.*, 262 S.W.3d at 360. Moreover, the law of this Circuit supports severing unconscionable provisions so that the remainder of the agreement to arbitrate may be enforced. *See Carter v. Countrywide Credit Indus., Inc.*, 189 F. Supp. 2d 606, 620 (N.D. Tex. 2002); *Fujitsu*, 81 F. Supp. 2d at 693. It is therefore recommended that Paragraphs (h) and (i) under the subheading "Arbitration of Disputes" be invalidated and the remainder of the agreement be enforced pursuant to the severability clause.

### C. Waiver

Plaintiffs also argue that Defendants have waived the right to arbitrate by substantially invoking the judicial process to the detriment or prejudice of Plaintiffs. (Doc. 45 at 28). Plaintiffs claim that Defendants have substantially invoked the judicial process by removing the suit to federal court, filing a motion to transfer venue, asserting affirmative defenses, participating in a scheduling conference, participating in the discovery process, allowing the

---

[5] The Court is unable to determine whether the fee-splitting provision in Paragraph (b) -- requiring parties to bear their own arbitration expenses -- is also substantively unconscionable because Plaintiffs have presented no evidence of potential arbitration costs or their ability to pay them. See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001) ("some specific information of future costs is required" to support unconscionability) (quoting Green Tree Fin. Corp., 531 U.S. at 92).

deposition of individual Defendants, and opposing Plaintiffs' motion for class certification. (Doc. 45 at 29). Plaintiffs aver that Defendants have "caused [them] to spend thousands of dollars and hundreds of hours on the litigation activities in this case," including "extensive discovery and briefing." *Id*. at 30.

There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right has been waived bears a heavy burden. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). Invocation of the judicial process alone does not constitute waiver; there must also be prejudice to the party opposing arbitration. *Id.* at 346. Prejudice refers to "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id*. (quoting *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 327 (5th Cir. 1999)). Plaintiffs have failed to identify any inherently unfair consequences related to Defendants' invocation of the judicial process; moreover, Plaintiffs' "generalized protestations" about costs and discovery are insufficient to overcome the strong federal presumption in favor of arbitration. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (holding that arbitration not waived where defendants had filed answer, sought discovery, and filed discovery-related motions in the trial court prior to seeking to compel arbitration).

Further, Defendants asserted in their Original Answer that Plaintiffs' claims were subject to an enforceable arbitration agreement and that Plaintiffs had failed to submit their claims to binding arbitration as a condition precedent to litigation. (Doc. 18 at 9). The Court of the Appeals for the Fifth Circuit has found no waiver where the party seeking to enforce the arbitration clause gave notice of its application by its answer. In *Tenneco Resins, Inc. v. Davy Intern., AG,* 770 F.2d 416, 420 (5th Cir. 1985), the defendant, in its original answer, requested

dismissal based on the existence of a valid arbitration agreement -- effectively putting the plaintiff "on notice" of the defendant's desire to arbitrate. Consequently, the appellate court held that the defendant had not waived its arbitration rights, despite participating in discovery and waiting over eight months to actually enforce the arbitration agreement. *Id*.

Finally, in this case, Plaintiffs contravened the plain language of both the arbitration and forum provisions of the PPM by filing suit in California state court. As a result, Defendants were required to mount a timely response to Plaintiffs' claims in order to preserve their rights. (Doc. 49 at 11). This invocation of the judicial process did not result in unfair prejudice to Plaintiffs, thus Plaintiffs are unable to demonstrate waiver of the right to arbitrate.

### III. CONCLUSION

Based on well-established state and federal precedent, as well as a plain reading of the arbitration clause, the undersigned concludes that (1) the deposit requirement is unconscionable and unenforceable and should thus be severed from the arbitration agreement, (2) the remainder of the arbitration agreement is valid and should be enforced, and (3) Plaintiffs should be required to pursue their claims in arbitration and this case should be dismissed. It is therefore recommended that Defendants' *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff William Chase Moen* (Doc. 32), *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Robert John Sharpe* (Doc. 34), *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Cindy Guarisco* (Doc. 36), and *Motion to Compel Arbitration and Dismiss or Stay Litigation as to Plaintiff Gary Downard* (Doc. 38) be GRANTED in part.

SIGNED April 17, 2013.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE